**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

**HAROLD SEREYKA,**                              :

                    **Plaintiff**       :       **CIVIL ACTION NO. 3:18-1681**

         **v.**                         :                  **(JUDGE MANNION)**

**NAVIENT SOLUTIONS, LLC,**             :

                   **Defendant**        :


**AMENDED MEMORANDUM**

Presently before the court is the renewed motion of counsel for plaintiff, Cynthia Pollick, Esq., ("Pollick"), to withdraw from this case alleging that "her services may be used to engage in activity that [she] believe[s] is unethical pursuant t to Professional Rule of Conduct 1.16." (Doc. 48). For the reasons set forth below, the court will **DENY** Pollick's renewed motion to withdraw as plaintiff's counsel.


I.       **BACKGROUND**

The court only discusses the background relevant to the instant motion of plaintiff's counsel to withdraw. Plaintiff originally filed this action *pro se,* in state court basically alleging that the defendant Navient Solutions, LLC, ("NSL"), engaged in unlawful collection activities against him and falsely

reported on his credit report that he owed it in excess of $35,000 for a student loan debt that he claimed was not his. Plaintiff alleged that the false reporting of a debt he did not owe prevented him from obtaining loans and leasing a vehicle due to his tarnished credit report. After NSL removed this case to federal court on August 23, 2018, and filed a motion to dismiss, Pollick filed her appearance for plaintiff on December 10, 2018. (Doc. 9). Pollick then received permission from the court to file an amended complaint, and she filed the amended pleading on December 18, 2018. (Doc. 14). Notably, in the amended complaint, which Pollick signed and filed for plaintiff, she alleged that plaintiff did not take out the student loan NSL was attempting to collect on when it made repeated harassing calls to plaintiff. Pollick also alleged that the student loan debt was not owed by plaintiff and that NSL falsely reported to credit agencies that he owes $35,722.06. Thus, Pollick alleged that this false report damaged plaintiff's ability to obtain loans and credit, and that NSL was liable to plaintiff for monetary damages.

Specifically, the amended complaint alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), under 15 U.S.C. §1692, *et seq.*, the Pennsylvania Fair Credit Extension Uniformity Act ("FCEUA"), 73 Pa. Stat. §2270.1, *et seq.*, and the Fair Credit Reporting Act ("FCRA"),15 U.S.C.

§1681, and raised a state law defamation claim regarding NSL's collection activities of a consumer debt.

On March 22, 2019, the court granted, in part, and denied, in part NSL's motion to dismiss, (Doc. 17), plaintiff's amended complaint, (Doc. 14), pursuant to Fed.R.Civ.P. 12(b)(6). Specifically, plaintiff's FDCPA claim was dismissed without prejudice and, the motion was denied with respect to plaintiff's FCRA claim, which was allowed to proceed. Plaintiff's state law FCEUA and defamation claims were dismissed with prejudice since they were preempted by the FCRA. (Docs. 21 & 22).

This case then proceeded for the next 14 months and a stay was issued by the court on July 30, 2019, to allow the parties to pursue settlement discursions. The stay was then lifted on April 10, 2020, since plaintiff did not wish to engage in further settlement discussions, and the court directed the parties to proceed with the case and file a Joint Case Management Plan. (Doc. 43).

In April 2020, Judge Carlson then conducted a settlement conference with Pollick and NSL's counsel. Plaintiff was available for the conference. It appeared that the plaintiff was willing to settle his claims against NSL for an agreed upon amount.

- 3 -

However, prior to completing the proposed settlement of this case, on May 13, 2020, Pollick filed a motion to withdraw as plaintiff's counsel. (Doc. 48). The court issued an Order holding Pollick's motion in abeyance and allowed plaintiff 30 days to obtain new counsel. (Doc. 49).

Since plaintiff failed to obtain new counsel, the court issued an Order on November 23, 2020, denying Pollick's motion to withdraw as plaintiff's counsel and indicated that she remained as counsel of record for the plaintiff. (Doc. 51). The court also directed the parties to file a status report regarding the previously held settlement conference before Judge Carlson.

Pollick then sent the court a letter on November 24, 2020, advising it that she could not represent plaintiff due to issues which she could not disclose to the court without plaintiff's permission. (Doc. 52).

The court then scheduled a video hearing regarding Pollick's renewed request to withdraw as plaintiff's counsel for December 2, 2020, and the hearing was held. (Doc. 60). The court heard from Pollick and the plaintiff.

As directed, Pollick filed a brief, under Seal, in support of her request to withdraw on January 5, 2021. (Doc. 67). Exhibits are attached to Pollick's brief, including the transcript from the video conference.

- 4 -

In her brief, Pollick essentially states that when plaintiff and his wife divorced, she discovered that the Divorce Property Settlement Agreement provided that plaintiff will be responsible for "all loans, debts and/or obligations in his name." One of the debts plaintiff was allegedly responsible for was a debt to the U.S. Department of Education (hereinafter "Department") for student loans. Pollick contends that after plaintiff executed the Divorce Settlement Agreement, "[he] sought relief from the Federal Government from having to pay those student loans that were incorporated in [the Agreement]." Pollick also indicates that she did not initially have a copy of the plaintiff's divorce Agreement. Subsequently, plaintiff indicated to Pollick that he was going to contest the student loan debt and not pay the debt from the money he receives from NSL for the settlement of his claims in the instant case. As such, Pollick alleges that "one may believe that plaintiff would be using [her] services to defraud the Federal Government from the debt he agreed he owned when he signed the [Divorce] Property Settlement Agreement." Pollick then contends that "[t]o continue to use [her] professional services to possibly commit mail fraud by disclaiming ownership of the [student] loan in question is not ethically permitted and [she] [does] not feel comfortable participating in any settlement." Pollick also states that

- 5 -

plaintiff can complete the negotiations of the settlement in this case on his own, as he indicated he was willing to do.

As such, Pollick requests the court to let her withdraw from this case and permit plaintiff to complete the settlement on his own, "without [her] involvement."

## II.    DISCUSSION

At the December 2, 2020 hearing, plaintiff stated that during settlement discussions between Pollick, counsel for NSL and Judge Carlson, he agreed on a settlement amount with NSL and was under the "impression" that his case settled based on information that Pollick told him. In particular, plaintiff stated that Pollick told him that they were going to settle his case for a certain amount and that she would take $2000 for her fee. Then while expecting to sign settlement paperwork the next day, plaintiff stated that "all of a sudden", Pollick told him "I'm not your lawyer anymore" providing him with "no reason whatsoever." Plaintiff also stated that after he thought his case had settled, Pollick informed him that she wanted him to sign a document relating to the divorce decree he signed, seemingly acknowledging the student loan debt to the Department of Education, in

order to "cover her ass.," However, plaintiff refused to sign it and stated that the document "has nothing to do with [the instant] case."

Pollick stated that since plaintiff was obligated under the divorce Settlement Agreement to pay the student loan debt in his name to the Department of Education, he is responsible for this debt and must agree to use his settlement money from this case towards the student loan debt. When plaintiff basically informed Pollick that he does not think he owes the money to Department of Education and that he was not going to use his settlement money in the present case to pay the student loan debt, she indicated that this is "a problem" since "the federal government gets their money" and the student loans were "federal funds that were given to [plaintiff's] daughter and that is owed." Pollick alleges that if plaintiff fails to use his settlement money from this case towards the student loan debt, which he has unsuccessfully tried to get loan forgiveness from the government, she will be "defraud[ing] the Department of Education." Pollick indicated that NSL serviced the student loan debt plaintiff allegedly owed to the Department of Education. However, NSL does not hold student loans and it only processes payments for the Department.

The settlement amount NSL reached with plaintiff was to compensate plaintiff for his claims in the present case, namely, that it besmudged his credit report and caused him damages. Indeed, the Department is not a party to the instant case and any claim it may have against plaintiff for the student loan debt is in no way effected by any settlement plaintiff reaches with NSL regarding his claims against NSL for alleged unlawful debt collection practices. The Department of Education, which Pollick admitted was on notice of plaintiff's present case, will still be able to pursue any and all legal remedies against plaintiff for the re-payment of the student loan debt and plaintiff is entitled to raise any defenses he may have to dispute the debt. Pollick also states that she agreed to help plaintiff with his case after he filed it *pro se* so that he could get a settlement and then pay off the student loan debt.  Nonetheless, Pollick conflates her ethical obligations in this case by stating that since the Department of Education still maintains that plaintiff owes the student loan debt, "[she has] an obligation to the Court [and] to the [Department]" to make sure her services are used to have plaintiff pay the debt that is owed. She contends that if plaintiff refuses to pay the debt, then her services are going to be used to "defraud the federal government." Thus, Pollick contends that she is ethically required and duty bound under the

Rules of Professional Conduct to withdraw from this case so that she will not be part of plaintiff's attempt to "defraud the government", despite the fact that the Department of Education is aware of plaintiff's case against NSL.

In particular, Pollick cites to Professional Conduct Rule 1.16, 42 Pa.C.S.A., and states that she must withdraw from this case under the Rule because it provides that withdrawal is appropriate if the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent.

Rule 1.16(a)(1) provides: a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

(1) the representation will result in violation of the Rules of Professional Conduct or other law.

Rule 1.16(b)(2) and (3) provide: a lawyer may withdraw from representing a client if:

(2) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent;

(3) the client has used the lawyer's services to perpetrate a crime or fraud.

- 9 -

Pollick was aware of the student loan debt that plaintiff allegedly owed during her representation of him in this case for about 18 months. Plaintiff was also aware that plaintiff disputed he owed the student loan debt and that this dispute was central to his claims she raised on his behalf against NSL in this case. (*See* amended complaint, Doc. 14). Pollick then represented the plaintiff during the settlement conference regarding his claims against NSL. Pollick contends that when plaintiff advised her that he did not intend on using the settlement funds he received in this case to pay the student loan debt, she became concerned that plaintiff would not acknowledge his obligation to pay the debt, that she then believed he owed, and that it was unethical for her to allow plaintiff to use her services unless he agreed to pay the debt.

In short, the court finds that based on the circumstances of this case, Pollick's services are not being used in violation for any Rule of Professional Conduct and her continued representation of plaintiff through the completion of the settlement that was reached with NSL will not be using her services to defraud the government, regardless of what the plaintiff does with the settlement money. There is no claim for an offset in this case by the non-party Department of Education and the funds plaintiff receives in settlement

- 10 -

of his claims against NSL are simply not the only funds or assets that can be used if the Department prevails in its claim that plaintiff is obligated to pay the student loan debt. No doubt, that if the Department obtains a judgment against plaintiff for the debt, after it is established that he legally owes it, the Department can execute against any property that plaintiff may possess to satisfy the judgment. Plaintiff can also legally challenge any claim by the Department that he owes the debt and he may raise any defense that he may have to this debt. In fact, in the instant case, plaintiff alleged that the Department's loan was not a legitimate loan that he was obliged to pay since he did not sign the loan documentation. Just because the Department maintains that the debt is legitimate and that plaintiff owes it, and the divorce Settlement Agreement provides that plaintiff is obliged to pay any loans in his name, does not mean that the student loan debt is valid and that plaintiff must use his settlement money from this case to pay this debt as apparently demanded by Pollick.

Moreover, under Rule 11, when Pollick raised the allegations in the amended complaint that plaintiff did not owe the student loan debt, she was obligated to have made sure this was not a frivolous and unfounded allegation. Rule 11 reads, in pertinent part:

- 11 -

> [A]n attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . it is not being presented for any improper purpose . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . . the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . . Fed.R.Civ.P. 11(b).

The Third Circuit has noted that "[f]ormulating a rule broad enough to curb abusive litigation tactics and misuse of the court's process but yet not so sweeping as to hinder zealous advocacy was obviously a formidable task." *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987). However, the Third Circuit has held that Rule 11 imposes an obligation on attorneys to "Stop, Think, Investigate and Research" before filing litigation documents. *Id.*

During the hearing, plaintiff stated that he continued to contest the legitimacy of the student loan debt and he continued to dispute that he is legally responsible for the debt. He indicated that he wished to pursue the matter with the Department in a legal setting if it came after him to collect the debt. There is simply nothing unethical, unlawful or fraudulent for plaintiff to legally contest his alleged obligation to pay the student loan debt regardless of the Department's contention that the debt is legitimate and that he owes it. Simply stated, the court is not aware that the plaintiff is legally bound to

- 12 -

use any settlement money he receives in this case to pay a disputed debt. Indeed, since plaintiff stated that he is a federal employee, if the Department proves he owes the student loan debt, it can simply file documents with a court to garnish his wages until the debt is paid.

In short, Pollick's ill-conceived notion that plaintiff is going to do something unlawful or improper by not paying off the student loan debt with his settlement proceeds from this case against NSL and by continuing his challenge to the debt allegedly owed to the Department, is not grounds for her withdrawal from this case. Plaintiff's claims against NSL in this case and any student loan debt he may or may not owe to the Department of Education are unrelated matters, and Pollick's mistaken understanding that the two matters are somehow connected cannot be the reasonable basis for her to withdraw from this case and leave yet another client without representation at the last minute.

## III.   CONCLUSION

Accordingly, for the reasons set forth above, the court will **DENY** the Pollick's renewed motion to withdraw as counsel for plaintiff. Unless the plaintiff obtains new counsel within 14 days of the date of the accompanying Order, Pollick is directed to complete the settlement that was reached in this

case between plaintiff and NSL. After the settlement is completed and the case is closed, Pollick can terminate her representation of the plaintiff and, she is not obligated to represent plaintiff in any action that the Department of Education may institute against plaintiff or he may institute against the Department regarding the disputed outstanding student loan debt.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**


**DATE: February 24, 2021**
18-1681-03

- 14 -